# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: D.C., M.C., & M.C.**

**No. 15-0066** (Wood County 14-JA-8 through 14-JA-10)

**FILED**

June 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother R.C., by counsel Rhonda L. Harsh, appeals the Circuit Court of Wood County's December 23, 2014, order terminating her parental rights to D.C., M.C.-1, and M.C.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Angela Brunicardi-Doss, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) terminating her parental rights to the children and (2) denying her motion for an improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2014, the DHHR filed an abuse and neglect petition alleging that petitioner failed to adequately explain a skull fracture suffered by then-eleven-month-old M.C.-2. The DHHR claimed that petitioner arrived at an emergency room on January 26, 2014, with the child, who had a significantly swollen and bruised head. According to the petition, petitioner provided three explanations for the injury: (1) falling from an infant swing at the neighbor's home on January 25, 2014; (2) rough play with the neighbors' children on January 25, 2014; or (3) falling out of bed on January 22, 2014, when petitioner left the room briefly. However, police, social workers, and medical personnel did not find these explanations adequate. The petition further alleged that petitioner admitted she had sole possession of the child from January 24 until she

---

[1]Because two of the children share the same initials, we have distinguished them using numbers 1 and 2 throughout this Memorandum Decision. The circuit court case numbers also serve to distinguish each child.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

arrived at hospital, except for a thirty to forty-five minute period on January 25, 2014, when the neighbor watched her. As relayed in the petition, the neighbor had previously seen petitioner under the influence of pills, and when the neighbor watched the children on January 24, 2014, she heard petitioner say she "needed to go out and get f[*****] up." As reflected in the petition, petitioner stated that she had a houseguest during the relevant time period. The petition also provided that petitioner and the two oldest children were the subject of a 2011 abuse and neglect petition due to substance abuse. Following various evaluations, medical professionals determined that the child had a fractured skull.

In February of 2014, the parties took depositions of three medical professionals who attended to or consulted for the child in January of 2014 – Doctor Heather Samuelson, who at all times relevant hereto was a medical resident at Ruby Memorial hospital in internal medicine and pediatrics; Doctor Kamakshya Patra, a pediatrician; and Doctor John Collins, a pediatric neurosurgeon. Dr. Samuelson testified that the child arrived at the hospital with "extensive damage," including bleeding from at least one of the child's ears, bruises to her legs and sides, and visible swelling to her head that was "so bad" it displaced her ear. Dr. Samuelson testified that the child's head injuries resulted from a very forceful blow to the head and were non-accidental. Dr. Patra was the attending physician for the child. She also testified to the extent of the child's injuries, including the diagnosis of a skull fracture, and explained that the child's injuries were most likely non-accidental. Both Doctors Samuelson and Patra testified that the child's injuries would have been painful when inflicted and that they would expect those injuries to be accompanied by screaming and crying. Dr. Patra stated that the child could have been rendered unconscious or lethargic from the head injury, but he explained that petitione had not provided any indication of those symptoms in her explanations. Both doctors indicated that the injuries appeared non-accidental because of the severity of the head injury coupled with the child's additional injuries. Finally, Dr. Collins testified as to his assessment of the child. According to Dr. Collins, the child suffered a skull fracture, but he could not diagnosis the cause of that skull fracture as either accidental or non-accidental. However, he further explained that, as a neurosurgeon providing a consultation on head trauma, he does not ordinarily look to other injuries to a patient's body or whether the explanations provided for injury's cause match the overall injuries, although he was aware that this child had additional injuries. In Dr. Collins's professional opinion, the child's head injury could not be diagnosed as accidental or non-accidental, but "[i]f you expand your evidence out to other soft tissue injuries, if you expand your evidence out to inconsistencies of the story . . . it might look like one thing or the other."

In May of 2014, the circuit court held an adjudicatory hearing. In addition to the medical testimony, several witnesses testified to the timeline of events relevant to the child's injuries. Petitioner's neighbor testified that petitioner sought pills "to go get f[*****] up" on January 24, 2014, and that she babysat the child later that day. A police officer testified that petitioner appeared to be under the influence of a controlled substance at the hospital on January 26, 2014, with slurred speech and disorientation. He further testified that he asked petitioner in the hospital if anyone else watched the child on January 25, 2014, and petitioner identified only her neighbor. Petitioner, however, testified that the child had no bruises when she returned from her neighbor's house, but her houseguest watched the child for two-and-one-half hours on the evening of January 24, 2014, when petitioner left her home to retrieve some items from her prior apartment. Petitioner explained that she arrived home around 9:00 p.m., and the child was asleep. According

to her testimony, the child woke her up the next morning around 11:00 a.m. Petitioner stated that she picked the child up and "nonchalantly walked downstairs and sat her on the floor," where she prepared the child a bottle. She claimed that she only noticed the child's injuries when she began to feed her the bottle. Based on the evidence presented, the circuit court made the following relevant findings: that the child suffered extensive "life-threatening" and "non-accidental" physical injuries while in petitioner's custody; that petitioner took no action to identify the perpetrator; that petitioner changed her story to include a potential perpetrator whom she had not initially identified; that there was evidence that petitioner had a substance abuse problem; and that petitioner neglected her children.

In November of 2014, the circuit court held a dispositional hearing. Petitioner moved for a post-adjudicatory, or in the alternative a dispositional, improvement period. The circuit court noted the sad and emotional nature of the case, but the circuit court found that petitioner's explanations of the injuries were contrary to the medical evidence presented. Therefore, the deficiencies presented were not easily correctable. Moreover, the circuit court noted that petitioner had a history of CPS involvement, refused services in this matter until September of 2014, and missed visits with the children. The circuit court concluded that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that the children required stability. By order entered on December 23, 2014, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights to the children. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re: Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in terminating her parental rights because the DHHR failed to prove abuse or neglect by clear and convincing evidence. We have held that

> "[p]arental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the

3

custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser." Syllabus Point 3, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

Syl. Pt. 4, *In re: Harley C.*, 203 W.Va. 594, 509 S.E.2d 875 (1998). Petitioner argues that the circuit court failed to consider Dr. Collins's testimony that the child's injuries could be accidental or non-accidental, specifically in light of Dr. Collins' extensive background. Despite petitioner's argument that Dr. Collins's testimony is dispositive on the issue of whether the child suffered accidental or non-accidental injuries, Dr. Collins explained that his focus was the child's head injury, and there is no indication that his opinion on the matter incorporated a consideration of the child's remaining injuries. However, this argument notwithstanding, the record clearly reveals that Dr. Samuelson testified that those injuries were non-accidental, and Dr. Patra testified that those injuries were "most likely" non-accidental. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997); *see also In re: Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (stating that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." (citations omitted)). We will not "second-guess" the circuit court's findings as to the credibility of these witnesses. Therefore, we cannot find error in the circuit court's finding that these injuries were non-accidental or that petitioner failed to take action to identify her abuser. While petitioner relies on her own testimony to support her claim that she took action to identify the child's abuser, several witnesses testified that petitioner did not inform anyone that her houseguest was even a potential abuser when the child was taken to the hospital, and the officer specifically testified that petitioner informed him that her houseguest was not alone with the child on January 25, 2014, a claim she later changed. Therefore, we also cannot find error in the circuit court's ruling that petitioner took no action to identify the child's abuser, and the evidence strongly supports the finding that petitioner's explanations were inconsistent with the child's injuries. The record also reflects that, in the days prior to the child's arrival at the hospital, petitioner stated she was going "to go get f[*****] up," she sought pills from her neighbor, and she appeared impaired on the day the child arrived at the hospital. Based on our review of the record on appeal, we find no reversible error in the circuit court's finding that petitioner neglected her child resulting in physical injury.

Petitioner's second and final assignment of error is that the circuit court erred in denying her motion for a post-adjudicatory, or in the alternative dispositional, improvement period. Although petitioner argues that she is likely to participate in an improvement period, we find no indication in the record on appeal that she acknowledged a problem in her parenting that required improvement. We have explained that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the

4

perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re: Timber M*., 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H*., 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Based on the record before us, we cannot find reversible error in the circuit court's denial of petitioner's motion for an improvement period where she failed to acknowledge the existence of a problem that led to these injuries. Moreover, West Virginia Code §§ 49-6-12(b) and -12(c) provide circuit courts discretion in ruling on motions for improvement periods. The record on appeal reflects that petitioner missed visits with the children and had a history of substance abuse. Therefore, the circuit court was within its sound discretion to deny petitioner's motion.

For the foregoing reasons, we find no error in the circuit court's December 23, 2014, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: June 15, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II